# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

## Case No. 3:23-cv-00715-BJD-MCR

KIERRA DENISE LEWIS, as personal representative of the Estate of BB, a minor, on behalf of the Estate, and his survivors,

      Plaintiff,

v.

WALMART, INC., a foreign profit corporation, RICHFIELD WINDOW COVERINGS, LLC, a foreign profit corporation d/b/a Nien Made (U.S.A.),

      Defendants.

_____/

## AMENDED COMPLAINT[1]

Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, a minor, by and through the undersigned counsel, hereby files her Amended Complaint against the Defendants, WALMART, INC., a foreign profit corporation ("WALMART"); RICHFIELD WINDOW COVERINGS,

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(2), counsel for Defendant Richfield Window Coverings, LLC and counsel for Defendant Walmart, Inc. have consented in writing to the filing of Plaintiff's Amended Complaint.

LLC, a foreign profit corporation d/b/a Nien Made (U.S.A.) ("RICHFIELD"),
and states to the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action for damages that exceeds Seventy-Five
Thousand Dollars ($75,000.00).

2.     Plaintiff, KIERRA DENISE LEWIS, is the duly appointed
Personal Representative of the Estate of BB, a minor, having been appointed
Personal Representative by the Probate Division of the Circuit Court in and
for St. Johns County, Florida, File No. CP23-0240. As such, Plaintiff has
standing to institute and prosecute this cause of action under and by virtue
of § 768.16 Florida Statutes known as Florida's "Wrongful Death Act."

3.     At the time of his death on November 8, 2022, BB was one (1)
year old.

4.     Plaintiff, KIERRA DENISE LEWIS, brings this action in her
capacity as Personal Representative of the Estate of BB, and on behalf of his
survivors.

5.     All potential beneficiaries of a recovery for wrongful death and
their relationship to the deceased, BB, are identified as follows:

       a. The Estate of BB c/o KIERRA DENISE LEWIS, as Personal
          Representative of the Estate of BB;

    b.  KIERRA DENISE LEWIS, the natural mother of BB;

    c.  COREY BOSTIAN, the natural father of BB;

6.    At all times material hereto, Defendant WALMART was and is a Delaware corporation authorized to do business in the State of Florida. WALMART maintains agents and/or owns property, regularly transacts business, and derives substantial revenue from the goods used or sold in the State of Florida, purposely directs business activities including the sale of window coverings to Florida residents, and otherwise maintains continuous and systematic business contacts throughout the State of Florida. This cause of action arises from WALMART's contacts with the State of Florida in that it relates to the sale of window coverings manufactured, distributed and/or marketed by WALMART that were sold in the State of Florida for use by residents of the State of Florida, and resulted in the injury and death of BB, which occurred in the State of Florida. Therefore, WALMART is subject to the jurisdiction of this Court.

7.    At all times pertinent hereto, RICHFIELD WINDOW COVERINGS, LLC, was and is a California corporation maintaining its principal place of business in California. RICHFIELD maintains agents and/or owns property, regularly transacts business, and derives substantial revenue from the goods used or sold in the State of Florida, purposely directs

business activities including the sale of window coverings to Florida residents, and otherwise maintains continuous and systematic business contacts throughout the State of Florida. This cause of action arises from RICHFIELD'S contacts with the State of Florida in that it relates to the sale of window coverings manufactured, distributed, and/or marketed by RICHFIELD that were sold in the State of Florida for use by residents of the State of Florida, and resulted in the injury and death of BB, which occurred in the State of Florida. Therefore, RICHFIELD is subject to the jurisdiction of this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

8.    COREY BOSTIAN ("Bostian") and KIERRA LEWIS ("Lewis") were the natural parents of BB.

9.    On or about November 8, 2022, Lewis and Bostian resided at the home located at 10740 Zigler Avenue, Hastings, Florida (the "FAMILY HOME").

10.    At all times materials hereto, BB resided with his parents at the FAMILY HOME.

11.    Prior to November 8, 2022, Lewis and Bostian purchased a window covering that had express warranties that the product was child safe, and Lewis and Bostian relied upon this express warranty.

12.    The window covering was a Mainstay 1-inch cordless Vinyl Blind which was 43" W by 64" L, Part No. MS46-011-014-11 (the "SUBJECT WINDOW BLIND").

13.    At all relevant times hereto, decedent BB and his parents were unaware of the hidden strangulation hazard posed by the inner cord on the subject window coverings and were unaware that window blinds were a Top 5 Hidden Hazard in the Home according to the United States Consumer Product Safety Commission (CPSC).

14.    At the time of manufacture of the SUBJECT WINDOW BLIND, Defendants were aware that strangulation on window blind cords, including inner cord strangulation, was a hidden defect on its window blinds and posed a strangulation hazard to families with small children; yet Defendants provided a defective window blind with accessible inner cords and failed to warn of the dangers of inner cords.

15.    Defendants improperly designed, manufactured, and or sold the subject window covering allowing for an accessible inner cord on a "cordless" blind.

16.    On or about November 8, 2022, while in his bedroom at the FAMILY HOME, BB was strangled to death after becoming tangled in the

inner cord of the SUBJECT WINDOW BLIND that was purchased at Walmart Store by Lewis and Bostian and installed at the FAMILY HOME.

17.    All conditions precedent have been met or otherwise been waived.

## COUNT I
## STRICT LIABILITY v. WALMART, INC.

Plaintiff, by reference, reiterates and adopts paragraphs 1 through 17 and further states:

18.    WALMART and/or its employees and/or agents designed, imported, distributed, retailed, and/or marketed to the consuming public, the SUBJECT WINDOW BLIND.

19.    The SUBJECT WINDOW BLIND, its packaging, its instructions, and/or its warnings were defectively designed  by WALMART and/or its employees and/or agents, rendering it unreasonably dangerous and defective in one or more of the following respects:

    a.    The window blind contained accessible inner cords capable of creating loops in excess of 7-1/4 inches in length, which posed an unreasonable risk of strangulation.

    b.    The window blind contained a defective operating system that had accessible inner cords and did not have inner cord stops increasing the risk of inner cord strangulation.

c.    The window blind did not contain adequate inner cord stops to prevent inner cord strangulation.

d.    The window blind was sold without adequate safety devices to reduce access and/or eliminate the strangulation hazard.

e.    Defendant's product did not contain proper warnings and/or failed to provide adequate information regarding possible strangulation hazards associated with the inner cords on the subject product and did not to advise that the product was not suitable for use in homes with small children and instead was marketed by Walmart as child safe and "Certified Best for Kids"[2].

f.    Defendant designed the window blind in question with accessible inner cords, knowing that the same was unreasonably dangerous, against industry standard, and rendered the product defective.

g.    Defendant did not include adequate installation instructions.

---

[2] See Exhibit A – a Mainstays window blinds box with notated markings.

h.   Defendant's product did not warn the user not to place furniture in front of the window thereby increasing the risk of strangulation.

20.   At all times material hereto, the SUBJECT WINDOW BLIND was used for its intended purpose and in a manner reasonably anticipated by WALMART.

21.   As a direct and proximate result of the defects and/or the defective condition of the blind and its component parts and the strict product liability of Defendant, BB was caused to become tangled in the accessible inner cord of the SUBJECT WINDOW BLIND while in his bedroom at the FAMILY HOME, directly and proximately causing his conscious pain and suffering and resulting in his death.

22.   As a further direct and proximate result, the Estate of BB has suffered damages including funeral expenses due to BB's death that have become a charge against his estate, or that were paid by or on his behalf; Lewis and Bostian, the surviving natural parents of BB, have suffered damages including mental pain and suffering, loss of consortium, loss of companionship because of the death of their son, and all other damages as allowed by Florida Statute §768.21.

WHEREFORE, Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, deceased, demands judgment against WALMART, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT II
## NEGLIGENCE V. WALMART, INC.

Plaintiff, by reference, reiterates and adopts paragraphs 1 through 17 and further states:

23.    WALMART designed, imported, distributed, retailed, and/or marketed to the consuming public, the SUBJECT WINDOW BLIND and its packaging, its instructions, and its warnings.

24.    WALMART owed a duty to the consuming public, including Plaintiff and BB, to design, test, distribute, and supply products, including the SUBJECT WINDOW BLIND, which are reasonably safe for their intended uses.

25.    WALMART was aware of the American National Standards Institute ("ANSI") standard for safety of window covering products,

including the requirements for window blinds utilizing inner cords, as WALMART had a representative at the meetings on these standards[3].

26.    WALMART was further aware of the industry standards set forth by the members of the Window Coverings Safety Council ("WCSC") on the inner cords or cordless window coverings, as Walmart has been a member of the WCSC and is familiar with the information made publicly available to retailers as well as its manufacturer, co-defendant Richfield.

27.    WALMART was negligent and breached its duty of care in the design, distribution, retailing, testing, supplying, and/or installation of the SUBJECT WINDOW BLIND in one or more of the following respects:

      a.    Defendant negligently allowed the window blind to be sold in a manner or fashion with accessible inner cords capable of creating loops in excess of 7-1/4 inches, which posed an unreasonable risk of strangulation.

      b.    Defendant negligently failed to take adequate measures to design and/or redesign its window blind to avoid the risk of strangulation.

---

[3] The 2018 ANSI standards are attached hereto as Exhibit B, outlining the strict requirements on window covering products utilizing inner cords to ensure they do not become accessible to users, as they did here with BB.

c.      Defendant negligently designed the window blind in question with accessible inner cords and without inner cord stops, knowing that the same was unreasonably dangerous and rendered the product defective.

d.      Defendant's window blind negligently failed to contain an operating system that eliminates risk of inner cord strangulation.

e.      Defendant's product did not contain adequate warnings, installation instructions and/or failed to provide adequate information regarding possible strangulation hazards associated with the product, and failed to advise that the product was not suitable for use in homes with small children and instead marketed the product as child safe and "Certified Best for Kids".

f.      Defendant negligently supplied the window blind without adequate installation instructions to consumers regarding proper installation, the safety hazards of the window blind including its inner cords, and how to reduce or eliminate those hazards.

g. Defendant negligently failed to supply with the window blind at the time of sale and/or installation adequate safety devices to reduce access to and/or eliminate inner cord strangulation.

h. Defendant negligently failed to consult with Plaintiff as to the window covering most suitable for their application and negligently failed to consult regarding alternate feasible designs or other cordless alternatives and instead marketed the window covering as child safe and "Certified Best for Kids".

i. Defendant was negligent in the manner in which they marketed and installed their window blinds.

j. Defendant's product failed to contain proper warnings and/or failed to provide adequate information regarding possible strangulation hazards associated with the product, and failed to advise that the product was not suitable for use in homes with small children.

k. Defendant's product failed to warn the user not to place furniture in front of the window thereby increasing the risk of strangulation.

28.    The SUBJECT WINDOW BLIND was dangerous when put to its reasonably anticipated use, and was in fact, put to its reasonably anticipated use in the decedent's bedroom.

29.    WALMART, by and through its officers, directors, partners and/or managing agents knew or should have known that the subject window covering product had accessible inner cords and/or failed to include safety devices that could be used to eliminate the strangulation risk to small children, including BB, and had design defects which allowed for inner cord strangulation.

30.    WALMART had no reason to believe that those who used the SUBJECT WINDOW BLIND would realize its dangerous condition.

31.    WALMART knew that window coverings with accessible inner cords were deemed a Top 5 Hidden Hazard by the Consumer Product Safety Commission (CPSC) and knew that parents, like those of the Decedent, were unaware of the hazard.

32.    WALMART knew or had information from which WAL-MART in the exercise of ordinary care should have known of such dangerous condition, and failed to design, distribute, retail, install, retrofit, and/or recall the product so as to be reasonably safe.

33.    In knowingly selling a dangerous and defective product, and in knowingly failing to take adequate measures to recall or retrofit the dangerous and defective product, Defendant showed a complete indifference to or conscious disregard for the safety of others.

34.    As a direct and proximate result of the negligence of Defendant, BB was caused to become tangled in the inner cord of the SUBJECT WINDOW BLIND while in his bedroom at the FAMILY HOME, directly and proximately causing his conscious pain and suffering, and resulting in his death.

35.    As a further direct and proximate result, the Estate of BB has suffered damages including funeral expenses due to BB's death that have become a charge against his estate, or that were paid by or on his behalf; Lewis and Bostian, the surviving natural parents of BB, have suffered damages including mental pain and suffering, loss of filial consortium, loss of companionship because of the death of their son, and all other damages as allowed by Florida Statute §768.21.

WHEREFORE, Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, deceased, demands judgment against WALMART, for compensatory damages, costs, interest as allowed by law,

and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT III
## STRICT LIABILITY v. RICHFIELD WINDOW COVERINGS, LLC

Plaintiff, by reference, reiterates and adopts paragraphs 1 through 17 and further states:

36.    RICHFIELD designed, manufactured, imported, distributed, retailed, and/or marketed to the consuming public, the SUBJECT WINDOW BLIND.

37.    The SUBJECT WINDOW BLIND was defectively designed and/or manufactured by RICHFIELD and/or its employees and/or agents, rendering it unreasonably dangerous and defective in one or more of the following respects:

    a.    The window blind contained accessible inner cords in excess of 7-1/4 inches in length, which posed an unreasonable risk of strangulation.

    b.    The window blind contained a defective operating system that had accessible inner cords without adequate inner cord stops increasing the risk of inner cord strangulation.

    c.    The window blind failed to contain adequate inner cord stops to prevent inner cord strangulation.

d.   The window blind was sold without adequate safety devices to reduce access and/or eliminate the strangulation hazard.

e.   Defendant's product did not contain proper warnings and/or failed to provide adequate information regarding possible strangulation hazards associated with the product, and failed to advise that the product was not suitable for use in homes with small children.

f.   Defendant allowed the window blind to be sold in a manner or fashion so as to allow accessible inner cords capable of creating a loop in excess of 7-1/4 inches to exist and pose an unreasonable risk of strangulation.

g.   The window blind in question had accessible inner cords, knowing that the same was unreasonable dangerous and rendered the product defective.

h.   The window blind was sold with inadequate installation instructions.

i.   The window blind did not warn the user not to place furniture in front of the window thereby increasing the risk of strangulation.

38.    At all times material hereto, the SUBJECT WINDOW BLIND was used for its intended purpose and in a manner reasonably anticipated by RICHFIELD.

39.    As a direct and proximate result of the defects and/or the defective condition of the blind and its component parts and the strict product liability of Defendant, BB was caused to become tangled in the inner cord of the SUBJECT WINDOW BLIND while in his bedroom at the FAMILY HOME, directly and proximately causing his conscious pain and suffering and resulting in his death.

40.    As a further direct and proximate result, the Estate of BB has suffered damages including funeral expenses due to BB's death that have become a charge against his estate, or that were paid by or on his behalf; Lewis and Bostian, the surviving natural parents of BB, have suffered damages including mental pain and suffering, loss of filial consortium, loss of companionship because of the death of their son, and all other damages as allowed by Florida Statute §768.21.

WHEREFORE, Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, deceased, demands judgment against RICHFIELD, for compensatory damages, costs, interest as allowed by law,

and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT IV**
**NEGLIGENCE v. RICHFIELD WINDOW COVERINGS, LLC**

Plaintiff, by reference, reiterates and adopts paragraphs 1 through 17 and further states:

41.    RICHFIELD designed, manufactured, imported, distributed, retailed, and/or marketed to the consuming public the SUBJECT WINDOW BLIND.

42.    Defendant owed a duty to the consuming public, including Plaintiff and BB, to design, manufacture, test, distribute, and/or supply, products, including the SUBJECT WINDOW BLIND, which are reasonably safe for their intended uses.

43.    Defendant was negligent and breached its duty of care in the design, manufacture, distribution, retailing, testing, supplying, installation of the SUBJECT WINDOW BLIND in one or more of the following respects:

a.    Defendant negligently allowed the window blind to be sold in a manner or fashion containing accessible inner cords allowing loops in excess of 7-1/4 inches, which posed an unreasonable risk of strangulation.

b.    Defendant negligently failed to take adequate measures to design and/or redesign its window blind to avoid the risk of strangulation.

c.    Defendant negligently designed the window blind in question with accessible inner cords and without inner cord stops, knowing that the same was unreasonably dangerous and rendered the product defective.

d.    Defendant's window blind negligently failed to contain an operating system that eliminates risk of inner cord strangulation.

e.    Defendant's product did not contain proper warnings and/or failed to provide adequate information regarding possible strangulation hazards associated with the product, and failed to advise that the product was not suitable for use in homes with small children.

f.    Defendant negligently supplied the window blind without proper installation instructions to consumers regarding proper installation, the safety hazards of the window blind, and how to reduce or eliminate those hazards.

g.  At the time of sale and/or installation, Defendant negligently failed to supply with the window blind adequate safety devices to reduce access to and/or eliminate inner cord strangulation.

h.  Defendant negligently failed to consult and/or train Walmart or its agents as to the window covering most suitable for their application, and negligently failed to consult regarding alternate feasible designs and cordless alternatives.

i.  Defendant was negligent in the manner in which they marketed their window blinds.

j.  Defendant's product did not warn the user not to place furniture in front of the window thereby increasing the risk of strangulation.

44.  The SUBJECT WINDOW BLIND was dangerous when put to its reasonably anticipated use, and was in fact, put to its reasonably anticipated use in the decedent's bedroom.

45.  RICHFIELD, by and through its officers, directors, partners and/or managing agents knew or should have known that the subject window covering product failed to include safety devices that could be used

to eliminate the strangulation risk to small children, including BB, and had design defects which allowed for inner cord strangulation.

46.    RICHFIELD had no reason to believe that those who used the SUBJECT WINDOW BLIND would realize its dangerous condition.

47.    Defendants knew or had information from which Defendants in the exercise of ordinary care should have known, of such dangerous condition and failed to design, manufacture, distribute, retail, install, retrofit and/or recall the product so as to be reasonably safe.

48.    In knowingly selling a dangerous and defective product, and in knowingly failing to take adequate measures to recall or retrofit the dangerous and defective product, Defendant showed a complete indifference to or conscious disregard for the safety of others.

49.    As a direct and proximate result of the negligence of Defendant, BB was caused to become tangled in the inner cord of the SUBJECT WINDOW BLIND while in his bedroom at the FAMILY HOME, directly and proximately causing his conscious pain and suffering and resulting in his death.

50.    As a further direct and proximate result, the Estate of BB has suffered damages including funeral expenses due to BB's death that have become a charge against his estate, or that were paid by or on his behalf;

Lewis and Bostian, the surviving natural parents of BB, have suffered damages including mental pain and suffering, loss of filial consortium, loss of companionship because of the death of their son, and all other damages as allowed by Florida Statute §768.21.

WHEREFORE, Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, deceased, demands judgment against RICHFIELD, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT V
## BREACH OF EXPRESS WARRANTY v. WALMART, INC.

Plaintiff, by reference, reiterates and adopts paragraphs 1 through 17 and further states:

51.    WALMART designed, manufactured, imported, distributed, retailed, and/or marketed to the consuming public the packaging for the SUBJECT WINDOW BLIND.

52.    On the packaging of the SUBJECT WINDOW BLIND, WALMART stated, in part, that the SUBJECT WINDOW BLIND was "child and pet safe." Further, WALMART stated on the packaging of the SUBJECT WINDOW BLIND that it was "CERTIFIED – Best for kids."

53.    WALMART, through the express warranties on its packaging of the SUBJECT WINDOW BLIND, informed consumers, and therefore Lewis and Bostian, of a promise that the SUBJECT WINDOW BLIND was safe for children in their home.

54.    The SUBJECT WINDOW BLIND, as referenced above, was manufactured in a faulty manner which thereafter caused the strangulation and resulting death of BB.

55.    WALMART breached their express warranty provided on the SUBJECT WINDOW BLIND packaging which stated, in part, that the item was "child and pet safe" and "Certified – Best for kids."

56.    As a further direct and proximate result, the Estate of BB has suffered damages including funeral expenses due to BB's death that have become a charge against his estate, or that were paid by or on his behalf; Lewis and Bostian, the surviving natural parents of BB, have suffered damages including mental pain and suffering, loss of filial consortium, loss of companionship because of the death of their son, and all other damages as allowed by Florida Statute §768.21.

WHEREFORE, Plaintiff, KIERRA DENISE LEWIS, as Personal Representative of the Estate of BB, deceased, demands judgment against WALMART, for compensatory damages, costs, interest as allowed by law,

and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated this 18th day of April 2024.

**WOOLSEY MORCOM, PLLC**

By: */s/ John A. Moran, III*
**JOHN A. MORAN, III**
Florida Bar No. 1018652
**JOSHUA A. WOOLSEY**
Florida Bar No. 037905
203 Fort Wade Road, Suite 260
Ponte Vedra, Florida 32081
(904) 638-4235 (telephone)
(904) 638-9302 (facsimile)
jack@woolseymorcom.com
josh@woolseymorcom.com
lynda@woolseymorcom.com
sara@woolseymorcom.com
arivera@woolseymorcom.com

*Attorneys for Plaintiffs*

and

**O'LEARY, SHELTON, CORRIGAN, PETERSON, DALTON & QUILLIN LLC**

**By:** /s/ James Corrigan

**JAMES T. CORRIGAN**
1034 S. Brentwood Blvd.
Penthouse 1-A, 23rd Floor
St. Louis, MO 63117
Telephone: (314) 405-9000
Facsimile: (314) 405-9999
corrigan@osclaw.com
fiala@osclaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 18th day of April 2024, a true and correct copy of the foregoing document was sent by e-mail on all counsel or parties of record listed below:

Brandon T. Holmes, Esq.
Dinsmore & Shohl LLP
201 N. Franklin Street, Suite 3050
Tampa, FL 33602
brandon.holmes@dinsmore.com
eileen.garvey@dinsmore.com
charlet.henderson@dinsmore.com

***Attorneys for WALMART Inc.,***

John P. Wiederhold, Esq.
Kummerlen Law PLLC
601 Heritage Drive, Sute 432
Jupiter, FL 33458
john@kummerlenlaw.com

***Co-Counsel for Defendant
Richfield Window Coverings, LLC***

Jameson B. Carroll, Esq.
Michael Weiss, Esq.
Carroll & Weiss, LLP
2870 Peachtree Road, NW, Suite 193
Atlanta, GA 30305

***Co-Counsel for Defendant
Richfield Window Coverings, LLC***

 /s/ John A. Moran, III
            Attorney